OPINION OF THE COURT
Leonard A. Weiss, J.
I. Introductory Question and Background
Did respondent Commissioner of the New York State Department of Correctional Services (Commissioner and Department) act arbitrarily, capriciously, or unlawfully by terminating the employment of petitioner John B. Gleason (petitioner or Gleason) during the probationary period Gleason was serving following Gleason’s permanent appointment to the position of correction officer trainee with the Department without a hearing for the reasons given by respondent in the background discussion which follows?
Effective October 16, 1978, petitioner began serving a probationary period following his permanent appointment as a correction officer trainee with the Department. Petitioner resigned his prior position as a counselor for autistic children allegedly in reliance on his appointment as a correction officer trainee. On October 13, 1978, petitioner was evaluated by a psychiatrist who found no psychiatric contraindication to petitioner’s assuming his position as a correction officer trainee.
On October 17, 1978, petitioner’s second day at the Department’s training academy, he received a hand-delivered letter *468 stating his appointment was "canceled” on authority of section 4.2 of the Department of Civil Service Classified Service Rules (4 NYCRR 4.2) which apparently permits the Department to choose one of the top three eligible candidates for appointment to a position within the Department. Petitioner believes the October 17, 1978 termination was caused by the Department’s awareness of petitioner’s previously being adjudicated a youthful offender and spending approximately three years at the Coxsackie Correctional Facility. After consulting with a Civil Service Department attorney on October 17, 1978, petitioner was orally reappointed to his job and supposedly told to take three days’ leave with pay.
On October 19, 1978, petitioner received notice in a telephone conversation from the Department’s Associate Director for Security Personnel that the Department had decided to adhere to its original decision to terminate petitioner’s employment. On October 24, 1978, this second termination was reversed when petitioner was orally informed that he was reinstated and assigned to leave without pay. By letter dated October 27, 1978, petitioner was informed of the Department’s belief that by law petitioner "may be disqualified * * * as a candidate for Correction Officer Trainee.”
Subsequent meetings between petitioner, his counsel, and respondent’s special legal representative revealed that respondent was seeking formal opinions from the State Attorney-General and the United States Treasury Department Bureau of Alcohol, Firearms, and Tobacco (which administers Federal gun control laws) to determine whether petitioner’s youthful offender adjudication would act as a legal bar to his holding the position of correctional officer trainee.
On January 2, 1979, petitioner received a third, and final, letter dated December 28, 1978 from the Department’s Associate Personnel Administrator informing him that under authority of section 4.5 of the Department of Civil Service Classified Service Rules (4 NYCRR 4.5) his employment would be terminated effective at the close of business on January 3, 1979.
Respondent’s answer reveals that the appointment and termination of petitioner three times occurred while respondent was attempting to determine the legal effect of petitioner’s prior youthful offender adjudication involving use of a firearm on petitioner’s eligibility to serve as a correction officer trainee. Respondent’s first inquiry eventually resulted *469 in the determination that petitioner’s youthful offender adjudication, standing alone, did not, under State law, operate as an automatic bar to employment as a correction officer.
Respondent’s second inquiry concerning the effect of youthful offender adjudication involving the use of a firearm on Federal disability to possess a firearm was answered by letter dated November 17, 1978 from Stephen Higgins (Acting Director of United States Treasury Department Bureau of Alcohol, Firearms and Tobacco). Higgins’ letter concluded that "the applicant [who] plead guilty to the felony of robbery involving use of a handgun, which carries a penalty of imprisonment of up to seven years * * * is under both Title I [Gun Control Act of 1968, 18 U. S. C. §§ 922(g) and (h)] and Title VII [Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. § 1202] firearms disabilities of conviction even though he was treated as a youthful offender” [sic]. Based upon Higgins’ letter, Carol Jenkins (special legal assistant to the Commissioner) concluded that petitioner’s Federal disability to possess firearms made petitioner ineligible for the correction officer trainee position because one of the minimum qualifications for the correction officer trainee position listed in the examination announcement is legal eligibility to carry a firearm. Respondent maintains that petitioner’s employment termination was proper because the possession of firearms legal disability makes petitioner ineligible for mandatory firearms training at the Department’s training academy, and also ineligible to possess a firearm as a correction officer must when he is on duty.
Respondent’s third stated reason for terminating petitioner’s employment is that petitioner allegedly told two other correction officer trainees during his preliminary stay at the Department’s training academy of his plan to do serious physical harm to an ex-girlfriend after he obtained his correction officer shield. Petitioner denies making any such statements and asks for a hearing to disprove that he made the threatening statements.
II. CONTENTIONS
A. Petitioner
Petitioner suggests that respondent’s termination of his employment was improper because respondent did not afford petitioner one week’s advance notice of his termination as required by section 4.5 of the Department of Civil Service Classified Service Rules (4 NYCRR 4.5); and, that respondent’s *470 failure to give petitioner a hearing to rebut the allegedly false statements attributed to him stigmatized his character and make it difficult, if not impossible, for him to obtain another job in law enforcement. Petitioner also suggests respondent acted improperly in terminating him before the completion of his minimum period of service (eight weeks), and in relying completely on the opinion of the Director of United States Treasury Department Firearms Bureau concerning petitioner’s legal disability to possess firearms because that issue is novel in the context of this case and has not been decided in court.
B. Respondent
Respondent suggests his action terminating petitioner was not arbitrary, capricious or illegal because the Department first learned of petitioner’s youthful offender adjudication on October 17, 1978. The youthful offender adjudication is significant, in respondent’s view, only insofar as it affects petitioner’s right to possess firearms under Federal law. Respondent urges it was not unreasonable to prevent petitioner from receiving training in which he would have to possess firearms until an opinion was obtained as to whether petitioner could lawfully do so under Federal law. Respondent suggests that its decision granting petitioner leave with pay under the circumstances was reasonable and rational.
Respondent further suggests that its recognizing the alleged statements petitioner made to two other correction officer trainees as indication that petitioner was not suited to satisfactorily perform as a correction officer further supports respondent’s terminating petitioner at the conclusion of his probationary period as reasonable and lawful.
Respondent answers petitioner’s lack of timely termination notice claim by labeling it "insubstantial”. Respondent says that late notice at best entitles petitioner to one or two days’ more pay, and not reinstatement. Finally, respondent urges that it mailed notice of termination effective January 3, 1979 to petitioner on December 28, 1978 by certified mail, return receipt requested. Respondent urges this court to accept as the date of effective service, the date the notice was mailed.
III. DECISION
Today this court is called upon to decide whether the correction Commissioner acted arbitrarily, capriciously, or erroneously in terminating petitioner from entering the correctional system as a prison guard (euphemistically "corree *471 tion officer”) because of petitioner’s prior involvement as a youthful offender in a robbery charge involving use of a firearm.
This case is difficult, the equities are confused, the law is confused, but the result is not.
The New York State Legislature has for many years groped with the problem of the protection of society from those who resort to crime while simultaneously attempting to afford to young people who have run afoul of the law a shield from the stigma of a conviction which would becloud their future lives and inhibit rehabilitation. The right of the public to full disclosure of and access to governmental records has further complicated the entire matter of how to deal with young criminals. Hence, continual amendment and changes to the youthful offender classification statutes are legislated almost annually. As recently as 1978, in the enactment of provisions for the transfer of criminal cases to the Family Court and the sealing of records thereof, the disclosure of information is permitted upon an order of this Supreme Court based upon a finding that the public interest or the interests of justice warrant disclosure in a particular cause for a particular case or for a particular purpose or use. In the recognition of the prohibitions upon society and government imposed by CPL 720.35 this court is concommitantly mindful of its duty and obligation to serve all who come before it. In Matter of Bell v Codd (57 AD2d 814) similar circumstances were considered in the case of a New York City Transit Authority police officer who had previously been adjudicated a youthful offender. We agree that in appropriate circumstances the facts underlying a youthful offender adjudication can be probed in order to aid in determining the moral fitness of an applicant for the position of a correction officer trainee, who, by the nature of his duties, is involved in the public welfare in a significant manner where the applicant must be held to a high standard in order to achieve that position. This court is asked to tell the correction Commissioner to close his eyes on the fact that a candidate for prison guard had been adjudged a youthful offender after pleading guilty to a charge of armed robbery.
This petitioner seeks to be trusted to guard prisoners, to have a license to carry a gun, and has shown a prior propensity to commit a robbery while in possession of a firearm. This court feels it would do great violence to any sense of reasona *472 bleness, propriety, or stability in the prison system to throw into it a guard with violent propensities which have previously expressed themselves in a crime involving a weapon.
Youthful offender treatment in any commonsense application of the law, was not intended to so totally seal a criminal record that a correction Commissioner could not have access to that record when considering the qualifications of a State correction officer who deals under pressure, guarding felons, with a firearm.
Legally, this court believes that 4 NYCRR 4.5(a) and (h) gives the correction Commissioner, and the Civil Service Department, the right to pay a candidate for a correction officer position who was improperly appointed in the first place because he was ineligible, in the opinion of the Acting Director of the Bureau of Firearms for the United States Treasury Department, to qualify for possession of a firearm instead of placing him on "active” status.
The court has gathered the Federal material necessary to review the determination of the Acting Director of the Federal Firearms Bureau but is reluctant to do so, because it believes the correction Commissioner acted reasonably in terminating petitioner when he did.
The court does believe the correction Commissioner acted improperly in including in the public record of this case the hearsay statements petitioner made to other correction officer appointees and directs that these affidavits be made available only to appellate courts, and be expunged from the final public record of this case filed in the State library system.
Matter of Hill v Edelman (92 Misc 2d 485) does have a message — that hearsay statements adversely reflecting on a candidate’s character should not be used in evaluating employment applications. But for the fact that this court is directing the striking of those statements from this record, after it is reviewed on appeal, it would be inclined to grant petitioner a hearing to rebut them.
The relief sought in the petition is denied.